UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GARY AND BETHANNE TILLOTSON, as Parents of SEAN C. TILLOTSON, and BETHANNE TILLOTSON, as Administratrix for the ESTATE OF SEAN C. TILLOTSON, )<br><br>Plaintiffs, )<br><br>v. )<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, )<br><br>Defendant. ) | Civil Action No. 16-296<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Gary Tillotson and Bethanne Tillotson, as parents of Sean C. Tillotson, and Bethanne Tillotson, as the duly-appointed Administratrix for the Estate of Sean C. Tillotson, by and through their counsel, McLane Middleton, Professional Association, hereby complain against Defendant Dartmouth-Hitchcock Medical Center. Plaintiffs demand a jury trial on all Counts. In support of this Complaint, the Plaintiffs state as follows:

### PARTIES

1.      Bethanne Tillotson is a resident of Bradford, Vermont, mother of Sean C. Tillotson, and is the Administratrix of the Estate of Sean C. Tillotson, having been appointed by the Vermont Superior Court, Orange District Probate Division on August 14, 2014 (Docket No. 144-7-14 Oepr). At the time of his death, Sean C. Tillotson was a resident of Bradford, Vermont.

2.      Gary Tillotson is a resident of Bradford, Vermont and the father of Sean C. Tillotson.

3.      Dartmouth-Hitchcock Medical Center ("DHMC") is a hospital licensed pursuant to New Hampshire Revised Statutes Annotated 151 to provide medical services in the State of New Hampshire and has a principal place of business at One Medical Center Drive, Lebanon, New Hampshire 03766.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because it is a suit between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      This Court has personal jurisdiction over DHMC because it is a licensed hospital in the State of New Hampshire, with a principal place of business in Lebanon, New Hampshire.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400.

## ALLEGATIONS COMMON TO ALL COUNTS

7.      Sean Tillotson was a 17-year-old high school student from the Bradford, Vermont area who collapsed and died on June 30, 2014 while traveling through the Denver International Airport in Denver, Colorado in route to a youth leadership conference.

8.      Prior to his death, Sean was a healthy high school senior at Oxbow High School and resided with his parents in Bradford, Vermont.  He was an exceptional student, school leader, and member of the National Honor Society.

9.      Sean was also an outdoor enthusiast who enjoyed biking, hiking, canoeing, camping, downhill or cross-country skiing, hunting, fishing, target shooting, playing lacrosse, football and other sports.  He was an Eagle Scout by the age of 16 and was the first scout in Troop 778 to ever attain two palms:  a Bronze and Gold.  He was selected the American Legion Department of Vermont's Eagle Scout of the Year for 2013.  In addition, he was a member of the

Caledonia Sharp Shooters and Green Mountain Shooting Sports 4H clubs and was a National 4H Shooting Sports Ambassador.

10.     By age 17, Sean had become a youth leader in his community.  He volunteered a significant amount of his time serving the Bradford Elementary School, doing trail work on Wrights Mountain, and supporting his community through volunteer work.

11.     Sean is survived by his parents Bethanne and Gary Tillotson.  Through this tragedy, Bethanne and Gary have lost their only son together.

12.     Sean lived a healthy life, with only minor medical problems including a history of asthma, and two knee procedures resulting from sports injury in September 2013 and April 2014. He had also been followed medically for a number of years for what was described to his family by providers as a "kidney cyst."  The initial presentation of this medical issue arose when Sean had blood in his urine just prior to his eighth birthday.  The cyst was described as a solid mass within his left kidney that was imaged and examined on multiple occasions, and deemed to be a benign calcified cyst.  When Sean became an adolescent, the annual follow-ups on the cyst were terminated.

13.     After experiencing blood in his urine on May 1, 2014, Sean and his mother went to DHMC emergency room for an evaluation.  Doctors performed an ultrasound on his kidneys, and his left kidney was read as "stable" and "unchanged" from previous exams.  DHMC did not conduct an extensive work-up after receiving the ultrasound results, and Sean was discharged that same day.

14.     The May 1, 2014 ultrasound results were reviewed, and the final report prepared and signed by doctors Stephanie P. Yen, M.D. and Brian Girard, D.O. of DHMC's radiology group in Lebanon, New Hampshire.

15.     In 2014, Sean was invited to participate in the American Wilderness Leadership conference in Jackson Hole, Wyoming.  It was determined and suggested by his providers that there was no reason to cancel his participation in this conference which was set for June 30th to July 6th.  On the morning of June 30th, Sean left Boston and while changing planes in Denver suddenly collapsed.  He was unable to be revived, and the coroner in Denver performed a full autopsy and examination.

16.     The autopsy results revealed that Sean had an extensive renal cell carcinoma in his left kidney, which had extended to adjacent blood vessels.  The report identified the size of this tumor as approximately 21.0 x 11.0 cm.  The acute mechanism of death was the formation of a blood clot and thrombosis of malignant tumor material, which dislodged and were passed through blood vessels into his lungs and heart.  Sean essentially had a pulmonary embolism-type event that resulted in an immediate arrest and death.

17.     The interpretation of Sean's kidneys was grossly inaccurate.  DHMC's ultrasound images of May 1, 2014 in fact demonstrate a large mass on Sean's left kidney measuring at least 7cm, which is completely omitted from the radiological report.  Due to the size of the mass, accepted practice would require it to be considered to be malignant and cancerous, until proven otherwise, and as such, the mass presented a critical finding for Sean, demanding immediate further assessment, with probable surgical intervention.

18.     Furthermore, the findings noted in the radiology report of May 1, 2014 indicating the left kidney is "less well visualized, particularly the upper pole region" required further review.

19.     Proper interpretation of the ultrasonic study would have unquestionably led to identification of the presence of the malignant mass in Sean's left kidney.

20.     The renal cell carcinoma Sean exhibited at autopsy was of a papillary type, and he did not have evidence of metastasis of his cancer, including no evidence of metastasis into the pulmonary artery or lung.

21.     An accurate and timely diagnosis from the May 1, 2014 ultrasound, followed up by surgical intervention in treatment of the kidney mass would have, to a high degree of probability, avoided the emboli event and Sean's death on June 30, 2014.

22.     Moreover, the failure of the ultrasonic evaluation of May 1, 2014 to note and report the critical presence of a large mass in Sean's kidney resulted in Sean being deprived essential and urgently needed care.  Had the ultrasound been reported consistent with the presence of the evident highly-suspicious and malignant mass, Sean would have been referred for expedited evaluation and assessment of the presence of the probable malignancy.

23.     Under such circumstances the presence of the malignant mass would have been diagnosed and surgical intervention would have been scheduled as soon as possible.  The surgery would have resected the cancerous kidney and adjacent blood vessels impacted by the tumor, with reconstruction of the blood vessels.

24.     Sean would also have been a candidate for post-surgical medical therapies involving both chemotherapy, and subsequently-available immunotherapy treatments.

25.     Such surgical and medical intervention would have provided Sean with a strong probability of being cured and surviving his cancer.

## COUNT I
### (Negligence – Wrongful Death of Sean C. Tillotson)

26.     Plaintiffs hereby incorporate by reference all of the preceding allegations and make them a part of this Count as if set forth fully at length herein.

27.     Defendant  DHMC had a duty to exercise the degree of skill, care, diligence, knowledge, and learning ordinarily exercised and possessed by the average medical care facility, taking into account the existing state of knowledge in the practice of medicine generally, specifically, including, but not limited to, the duty to take all steps necessary to protect Sean Tillotson as a patient of the hospital; the duty to safeguard him from abnormal or detrimental findings to the extent possible; the duty to ensure that Sean Tillotson was evaluated, diagnosed, and provided with recommendations for appropriate treatment; the duty to ensure that Sean Tillotson's ultrasound results of May 1, 2014 were properly reviewed, evaluated, and followed up on; the duty to ensure that its physicians and/or health care professionals, including but not limited to its radiologists and radiologic technologists, consulted with appropriate medical providers regarding follow up treatment of Sean Tillotson's left kidney; the duty to ensure that its physicians and/or health care professionals, including but not limited to its radiologists and radiologic technologists, assessed and understood the significance of the results of Sean Tillotson's May 1, 2014 ultrasound; the duty to ensure that its physicians and/or health care professionals, including but not limited to its radiologists and radiologic technologists, ordered follow-up testing based on the results of Sean Tillotson's May 1, 2014 ultrasound; the duty to ensure that its physicians and/or health care professionals, including but not limited to its radiologists and radiologic technologists, ordered additional treatment based on the results of his May 1, 2014 ultrasound; the duty to ensure that its physicians and/or health care professionals, including but not limited to its radiologists and radiologic technologists, documented the abnormal finding from Sean Tillotson's May 1, 2014 ultrasound; the duty to ensure that its physicians and/or health care professionals, including but not limited to its radiologists and radiologic technologists, referred Sean Tillotson to another physician based on the results of his

May 1, 2014 ultrasound; the duty to communicate the abnormal finding in the May 1, 2014 ultrasound to Sean Tillotson and his parents; the duty to communicate the abnormal finding in the May 1, 2014 ultrasound to Sean Tillotson's primary care physician; the duty to provide Sean Tillotson, his urology physician, his primary care physician, or any other relevant health care provider with documentation of the abnormal finding from the May 1, 2014 ultrasound; the duty to review and take responsibility for Sean Tillotson's records at DHMC; the duty to ensure that hospital staff, employees, and/or agents understand and follow its written policies; the duty to train hospital staff, employees, and/or agents in the implementation of its written policies; the duty to ensure that its transcriptionists follow hospital policy and include the primary care provider on all test results, including ultrasounds; the duty to manage and operate the hospital in such a way as to ensure that its patients receive all medical information; and any and all additional duties as may have arisen from the obligations of accepting Sean Tillotson as a patient.

28.     DHMC disregarded these duties, failed to exercise the degree of skill, care, diligence, knowledge and learning ordinarily exercised and possessed by the average medical care facility, taking into account the existing state of knowledge in the practice of medicine generally, specifically, including, but not limited to, failing to take all steps necessary to protect Sean Tillotson as a patient of the hospital; failing to safeguard him from abnormal or detrimental findings to the extent possible; failing to ensure that Sean Tillotson was evaluated, diagnosed, and provided with recommendations for appropriate treatment; failing to ensure that Sean Tillotson's May 1, 2014 ultrasound results were reviewed, evaluated, and followed up on; failing to ensure that its physicians and/or health care professionals, including but not limited to its radiologists and radiologic technologists, assessed and understood the significance of the results

of Sean Tillotson's May 1, 2014 ultrasound; failing to ensure that its physicians and/or health

care professionals, including but not limited to its radiologists and radiologic technologists,

ordered follow-up testing based on the results of Sean Tillotson's May 1, 2014 ultrasound;

failing to ensure that its physicians and/or health care professionals, including but not limited to

its radiologists and radiologic technologists, ordered additional treatment based on the results of

his May 1, 2014 ultrasound; failing to ensure that its physicians and/or health care professionals,

including but not limited to its radiologists and radiologic technologists, documented the

abnormal finding from Sean Tillotson's May 1, 2014 ultrasound; failing to ensure that its

physicians and/or health care professionals, including but not limited to its radiologists and

radiologic technologists, referred Sean Tillotson to another physician based on the results of his

May 1, 2014 ultrasound; failing to communicate the abnormal finding in the May 1, 2014

ultrasound to Sean Tillotson or his parents; failing to communicate the abnormal finding in the

May 1, 2014 ultrasound to Sean Tillotson's primary care physician; failing to provide Sean

Tillotson, his urology physician, his primary care physician, or any other relevant health care

provider with documentation of the abnormal finding from the May 1, 2014 ultrasound; failing to

review and take responsibility for Sean Tillotson's records at DHMC; failing to ensure that

hospital staff, employees, and/or agents understand and follow its written policies; failing to train

hospital staff, employees, and/or agents in the implementation of its written policies; failing to

ensure that its transcriptionists follow hospital policy and include the primary care provider on

all test results, including ultrasounds; failing to manage and operate the hospital in such a way as

to ensure that its patients receive all medical information; and breaching any and all additional

duties as may have arisen from the obligations of accepting Sean Tillotson as a patient.  The

Defendant's negligent conduct may include other acts of negligence specifically related to the

treatment of Sean Tillotson which have not yet been identified and the Plaintiffs reserve the right to further specify his claims against the Defendant up to and including the time of trial.

29.    DHMC physicians and/or health care professionals, including but not limited to Dr. Yen and Dr. Girard, other radiologists and radiologic technologists, and physicians charged with Sean Tillotson's care were express, apparent and/or implied agents of DHMC, which is liable for all the acts and omissions of these individuals, and its other employees and agents, under the doctrines of *respondeat superior* and vicarious liability.

30.    As a direct and proximate consequence of DHMC's breaches of duties and actions described above, Sean Tillotson suffered losses and damages, including, but not limited to, his untimely and wrongful death from complications of his undiagnosed renal cancer, losing a clearly probable cure of his renal cancer which would have been achievable with proper follow-up starting on May 1, 2014, loss of enjoyment of life, dramatically reduced life expectancy and increased risk of impending death, loss of income, loss of earning capacity, and other expenses and other lost economic benefits and damages.

<u>**COUNT II**</u>
**(Statutory Claim for Bethanne and Gary Tillotson, as Parents of Sean C. Tillotson, Pursuant to RSA 556:12, III)**

31.    Plaintiffs hereby incorporate by reference all of the preceding allegations and make them a part of this Count as if set forth fully at length herein.

32.    As a result of each Defendant's negligence as set forth herein, Mr. and Mrs. Tillotson have lost the familial relationship with their minor son Sean.

33.    The Plaintiffs are entitled to recovery of damages pursuant to the provision of RSA 556:12, III.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment as follows:

A.      Award Plaintiffs compensatory damages, exemplary damages, and attorneys'

        fees, costs and expenses under each count of this Complaint, in an amount to be

        determined at time of trial, together with pre-judgment and post-judgment interest

        accrued thereon; and

B.      Award such other and further relief this Court shall deem just and proper.

**<u>DEMAND FOR A JURY TRIAL</u>**

Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure, Plaintiffs demand a

trial by jury on all issues triable as of right by a jury.

Dated: June 29, 2016                              Respectfully submitted,

                                                  BETHANNE AND GARY TILLOTSON, as
                                                  Parents of SEAN C. TILLOTSON, and
                                                  BETHANNE TILLOTSON  as
                                                  Administratrix for the ESTATE OF SEAN
                                                  C. TILLOTSON

                                                  By their attorneys,

                                                  McLANE MIDDLETON,
                                                  PROFESSIONAL ASSOCIATION

                                                  /s/ Bruce W. Felmly
                                                  Bruce W. Felmly, N.H. Bar No. 787
                                                  bruce.felmly@mclane.com
                                                  Nicholas F. Casolaro, N.H. Bar No. 20612
                                                  nicholas.casolaro@mclane.com
                                                  900 Elm Street, P.O. Box 326
                                                  Manchester, New Hampshire 03105-0326
                                                  Telephone: (603) 625-6464
                                                  Facsimile: (603) 625-5650