```
           UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE
```

Gary and Bethanne Tillotson, as
Parents of Sean C. Tillotson, and
Bethanne Tillotson, as Administratrix
for the Estate of Sean C. Tillotson

   v.                                           Civil No. 16-cv-296-LM
                                                                                        Opinion No. 2017 DNH 015

Dartmouth-Hitchcock Medical Center

## O R D E R

Plaintiffs Bethanne and Gary Tillotson brought this wrongful-death suit against Dartmouth-Hitchcock Medical Center ("DHMC") following the tragic death of their son, Sean Tillotson. The Tillotsons allege that DHMC doctors failed to identify and treat a large tumor in Sean's left kidney that led to his death. DHMC moves to dismiss, arguing that plaintiffs lack standing to bring a wrongful-death action under New Hampshire law. The Tillotsons object. On January 19, 2017, the court heard oral argument on defendant's motion.

### Legal Standard

Defendant brings its motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(6). The First Circuit has noted that motions to dismiss for lack of standing are often treated as motions to dismiss for failure to state a claim, "thus bringing them under the rubric of Rule 12(b)(6)."

United States v. AVX Corp., 962 F.2d 108, 114 n.6 (1st Cir. 1992); see also McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003) (evaluating defendant's standing argument pursuant to Rule 12(b)(6)).

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citations and internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Background**

Sean Tillotson was first diagnosed with a benign calcified cyst in his left kidney when he was seven years old. Sean had annual follow-up examinations of the cyst when he was younger. On May 1, 2014, two months before his death, Sean experienced blood in his urine. He was admitted to the DHMC emergency department in Lebanon, New Hampshire, and doctors performed an ultrasound of his kidneys. After reviewing the ultrasound

results, doctors determined that Sean's left kidney was "stable" and "unchanged" from previous exams.  See doc. no. 1 at ¶ 13.  DHMC did not conduct an extensive work-up after receiving the ultrasounds results, and Sean was discharged that same day.

On June 30, 2014, Sean, then a 17-year-old high school student in Bradford, Vermont, was traveling to Jackson Hole, Wyoming to attend a youth leadership conference.  Sean was changing planes at the Denver International Airport when he suddenly collapsed and died.  An autopsy performed after Sean's death revealed that he had a large malignant tumor in his left kidney.  Sean died after part of the tumor dislodged and passed through blood vessels into his lungs and heart.

The Tillotsons allege that DHMC's interpretation of the May 1, 2014 kidney ultrasound was "grossly inaccurate."  Id. at ¶ 17.  According to the Tillotsons, the ultrasound images demonstrate a large mass on Sean's left kidney measuring at least seven centimeters, which is omitted from the radiological report.  The Tillotsons allege that proper interpretation of the ultrasound would have led to identification of the malignant tumor in Sean's left kidney.  The Tillotsons allege that the tumor required immediate further assessment and probable surgical intervention.  With proper treatment, the Tillotsons

allege that Sean would not have suffered the pulmonary embolism that caused his death.

On August 14, 2014, the Orange County District Probate Division of the Vermont Superior Court appointed Sean's mother, Bethanne Tillotson, as the administrator of Sean's estate. On June 29, 2016, the Tillotsons, both Vermont residents, filed this wrongful-death suit against DHMC under New Hampshire law. Doc. no. 1. The complaint asserts two claims: (1) a wrongful-death claim by Bethanne Tillotson, as the administrator of Sean's estate (Count I),[1] and (2) a wrongful-death claim by Bethanne and Gary Tillotson, as Sean's parents, for loss of familial relationship under RSA 556:12, III (Count II).

## Discussion

DHMC contends that a Vermont-appointed administrator is restricted to filing a wrongful-death claim exclusively under Vermont's wrongful-death statute. See 14 V.S.A. § 1492. Thus, DHMC argues that Bethanne Tillotson lacks standing to bring a wrongful-death suit under New Hampshire state law. Additionally, DHMC argues that plaintiffs cannot bring a claim

---

[1] New Hampshire does not recognize a common-law claim for wrongful death. See Hebert v. Hebert, 120 N.H. 369, 370 (1980). Thus, Count I invokes RSA 556:12, I.

4

for loss of familial relationship because they are not New Hampshire residents.

I. Count I

Bethanne Tillotson was appointed administrator of Sean C. Tillotson's estate under Vermont law.  DHMC contends that a conflict exists between the relevant New Hampshire and Vermont wrongful-death statutes,[2] and Vermont courts lack jurisdiction to distribute damages awarded to a Vermont estate under New Hampshire's statute.  See doc. no. 10 at 8-9.  DHMC argues that, as a Vermont-appointed administrator, Bethanne Tillotson may only seek damages under Vermont's wrongful-death statute.  See 14 V.S.A. § 1492.  Because Bethanne Tillotson brought this claim on behalf of the estate under New Hampshire law, DHMC asserts that Count I must be dismissed.

---

[2] Although DHMC points to an apparent conflict between the New Hampshire and Vermont wrongful-death statutes, there is no choice-of-law issue in this case.  Plaintiffs invoke New Hampshire law, and DHMC does not dispute that New Hampshire's choice-of-law principles call for the application of New Hampshire's wrongful-death statute.  In fact, DHMC is "content" with plaintiffs' choice of New Hampshire law.  Doc. no. 12 at 6.  Thus, there is no dispute that plaintiffs' claims are governed by New Hampshire law.

In support of its claims, DHMC relies on Calhoun v. Blakely, 564 A.2d 590 (Vt. 1989).³  Like the present case, Calhoun involved the administrator of a Vermont estate—the decedent's mother—who brought a wrongful-death action in New Hampshire under New Hampshire state law.  The New Hampshire case was settled, and the decedent's father then petitioned the Vermont Superior Court, seeking half the settlement proceeds.  Id. at 591.  In accordance with New Hampshire law, the settlement proceeds were considered part of the decedent's estate.  Id. at 593.  The decedent's father, however, brought suit under Vermont's wrongful-death statute, 14 V.S.A. § 1492(c), which awards damages based on pecuniary loss to the decedent's spouse and next of kin.  Id. at 592.

The Vermont Supreme Court held that because the underlying wrongful-death action was brought under New Hampshire law, Vermont's wrongful-death statutory scheme had no application to the settlement.  Id. at 593.  Thus, the court concluded that the Vermont Superior Court had no jurisdiction to distribute the settlement proceeds under § 1492(c).  Id.  But, contrary to DHMC's argument, the Vermont Supreme Court never stated that all

---

³ When Calhoun was decided, the probate court was separate from the superior court.  In 2010, Vermont's state-court system was reorganized, and the probate court became a division of the superior court.  See 4 V.S.A. § 30.

Vermont courts lack jurisdiction to distribute damages awarded under New Hampshire's wrongful-death statute.  Rather, the court specifically held that the Vermont Probate Court must distribute the wrongful-death proceeds as they were part of the decedent's estate.  Id.  Importantly, the court in Calhoun did not suggest that the administrator of a Vermont estate lacks standing to pursue wrongful-death damages in another jurisdiction.

There is simply no support for defendant's position that wrongful-death damages awarded under New Hampshire law cannot be distributed to a Vermont estate.  The Vermont Probate Court will distribute any wrongful-death damages awarded to the Estate of Sean C. Tillotson, in accordance with applicable law.  See id. at 593 & n.3; see also RSA 556:14.[4]  Moreover, there is no support for defendant's argument that Vermont law somehow deprives a Vermont-appointed administrator of standing to seek damages under the wrongful-death statute of another jurisdiction, such as the jurisdiction where the alleged medical negligence occurred.  Thus, Vermont's wrongful-death statutory scheme does not deprive Bethanne Tillotson of standing to bring

---

[4] RSA 556:14 states that damages recovered under New Hampshire's wrongful-death statute "shall become a part of the decedent's estate and be distributed in accordance with the applicable provisions of law."  It does not, as DHMC contends, require a New Hampshire probate court to distribute such damages.

this wrongful-death claim on behalf of the estate under New Hampshire law.[5]

Additionally, DHMC appears to suggest that New Hampshire law prohibits out-of-state administrators from suing under its wrongful-death statute. However, the plain language of New Hampshire's wrongful-death statute does not limit the right of action to New Hampshire-appointed administrators. See RSA 556:12, I ("the administrator of the deceased party" may serve as plaintiff in a wrongful-death action on behalf of the estate). In many states, including Vermont, an out-of-state administrator must obtain ancillary letters of administration in the state where they are bringing the wrongful-death suit. See Weinstein v. Med. Ctr. Hosp. of Vt., Inc., 358 F. Supp. 297, 298 (D. Vt. 1972) ("[A] foreign administrator is without standing to prosecute the claim of his decedent unless authorized by ancillary letter issued [in Vermont]."). However, an out-of-state administrator can bring a New Hampshire wrongful-death action without obtaining ancillary letters of administration in New Hampshire. See Ghilain v. Couture, 84 N.H. 48, 51-56

---

[5] For the reasons stated above, the court rejects DHMC's argument that plaintiffs fail to satisfy the redressability prong of Article III standing.

(1929);[6] see also Coburn v. Dyke, 103 N.H. 159, 161 (1961) (noting that in Ghilain, "a foreign domiciliary administrator was allowed to sue under our wrongful death statute without the necessity of the appointment of an ancillary administrator in this state"). In fact, plaintiffs cite a relatively recent case against DHMC where a Vermont-appointed administrator brought a wrongful-death action based on medical negligence in this court without obtaining ancillary letters of administration in New Hampshire. See Aumand v. Dartmouth-Hitchcock Medical Center, No. 06-cv-434-JL. Thus, Bethanne Tillotson has standing to bring this action on behalf of Sean's estate in New Hampshire without obtaining ancillary administration.

## II. Count II

DHMC argues that Count II must be dismissed because the Tillotsons are nonresident parents. However, DHMC points to no authority to support its argument, and nothing in RSA 556:12 suggests that this right of action is limited to New Hampshire residents. Therefore, both Bethanne and Gary Tillotson, as Sean's parents, have standing to assert their claim for loss of familial relationship under RSA 556:12, III.

---

[6] Although New Hampshire's wrongful-death statute has been amended since Ghilain was decided, the court has not overruled its holding that an out-of-state administrator may bring suit without obtaining ancillary letters of administration in New Hampshire.

In sum, plaintiffs have proper standing to bring this wrongful-death action against DHMC under New Hampshire law, both on behalf of the estate (Count I) and as the decedent's parents (Count II).  DHMC does not otherwise challenge the jurisdiction or venue of this court.  Accordingly, the court denies DHMC's motion to dismiss.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss (doc. no. 10) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 24, 2017

cc:   Nicholas F. Casolaro, Esq.
      Bruce W. Felmly, Esq.
      Kaveh S. Shahi, Esq.