```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
```

Gary and Bethanne Tillotson, as
Parents of Sean C. Tillotson, et al.

    v.                          Civil No. 16-cv-296-LM
                                   Opinion No. 2017 DNH 178

Dartmouth-Hitchcock Medical Center

## O R D E R

Following the death of their son, Sean Tillotson, Bethanne and Gary Tillotson filed suit against Dartmouth-Hitchcock Medical Center ("DHMC"), alleging that DHMC doctors failed to identify and treat a large tumor in Sean's left kidney that led to his death. The Tillotsons now move for leave to amend their complaint based on information regarding Sean's medical treatment learned through discovery. DHMC objects.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 15 provides that the court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, leave to amend should be granted absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Klunder v. Brown Univ., 778 F.3d 24, 34 (1st Cir. 2015) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

## BACKGROUND[1]

On May 1, 2014, Sean Tillotson was admitted to the DHMC emergency department in Lebanon, New Hampshire after observing blood in his urine. Dr. Brian Girard performed an ultrasound of Sean's kidneys. Sean had previously been diagnosed with a benign calcified cyst in his left kidney when he was younger. Dr. Girard and Dr. Stephanie Yen reviewed Sean's ultrasound results and determined that his left kidney was "stable" and "unchanged" from previous exams. See doc. no. 1 ¶ 13. The doctors prepared a final report on the ultrasound results. Sean was discharged that same day. He died less than two months later after portions of a large malignant tumor in his left kidney dislodged and traveled into his lungs and heart.

On June 29, 2016, the Tillotsons filed this wrongful death lawsuit, alleging that DHMC's interpretation of the May 1 kidney ultrasound was "grossly inaccurate," id. at ¶ 17, and that proper interpretation of the ultrasound would have led to

---

[1] These facts are drawn from the allegations in the Tillotsons' original complaint (doc. no. 1) and proposed amended complaint (doc. no. 26-1).

2

identification of the malignant tumor in Sean's left kidney.  In
January 2017, through discovery in this action, the Tillotsons
learned the following information related to the May 1
ultrasound examination that DHMC had not previously disclosed:

- Dr. Girard twice measured Sean's left kidney and kidney cyst as part of the ultrasound examination;

- Dr. Girard decided to re-measure the kidney and cyst—after acquiring an original set of still images—out of concern that his original measurements were inaccurate;

- Dr. Girard's re-measurements of the left kidney and cyst were "significantly smaller" than the original measurements, doc. no. 26-1 at ¶ 17;

- Dr. Girard had prepared a preliminary report on the ultrasound results that included "dramatic differences" from the final report, id. at ¶ 50; and

- Dr. Girard recorded moving images or "cine clips" of Sean's kidneys as part of the ultrasound examination.  Id. at ¶ 18.

The Tillotsons now move to amend their complaint based on this
newly discovered information.

**DISCUSSION**

In their proposed amended complaint, the Tillotsons
incorporate the newly learned facts and seek to add one count
for violation of the New Hampshire Patients' Bill of Rights, RSA
151:21 (Count III).  The Patients' Bill of Rights requires
licensed health care facilities to adopt a policy setting forth
patients' rights and responsibilities, as defined in the

3

statute, and to treat patients in accordance with that policy. See RSA 151:20, I. DHMC objects to the Tillotsons' motion, arguing that the proposed amendment is futile, untimely, and prejudicial.

I. Futility

DHMC first argues that the proposed claim is futile because the Tillotsons were not "patients" and therefore lack standing to assert a claim under the Patients' Bill of Rights.

In assessing futility, the court uses the same standard that applies to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006). Under Rule 12(b)(6), the court must accept the factual allegations in the proposed amended complaint as true, construe reasonable inferences in the plaintiffs' favor, and determine whether the factual allegations in the complaint "set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The First Circuit has noted that motions to dismiss for lack of standing are often treated

as motions to dismiss for failure to state a claim, "thus bringing them under the rubric of Rule 12(b)(6)." United States v. AVX Corp., 962 F.2d 108, 114 n.6 (1st Cir. 1992); see also McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003) (evaluating defendant's standing argument pursuant to Rule 12(b)(6)).

In Count III of the proposed amended complaint, the Tillotsons allege that DHMC violated Sean's rights under the Patients' Bill of Rights because it did not fully inform Sean of his ultrasound examination results on May 1, 2014. RSA 151:21, IV states:

> The patient shall be fully informed by a health care provider of his or her medical condition, health care needs, and diagnostic test results, including the manner by which such results will be provided and the expected time interval between testing and receiving results, unless medically inadvisable and so documented in the medical record, and shall be given the opportunity to participate in the planning of his or her total care and medical treatment, to refuse treatment, and to be involved in experimental research upon the patient's written consent only.

(emphasis added). The Tillotsons allege that DHMC violated this provision because it did not (1) inform Sean that Dr. Girard re-measured the left kidney and cyst, (2) provide Sean with the results of those re-measurements, or (3) inform Sean that Dr. Girard took cine clips as part of the ultrasound. See doc. no. 26-1 at ¶ 19.

5

The Patients' Bill of Rights "plainly establishes a private cause of action for violation" of the statute. See Carlisle v. Frisbie Mem'l Hosp., 152 N.H. 762, 777 (2005). Based on the allegations in the proposed amended complaint, there is no question that Sean, prior to his death, would have satisfied the basic standing requirements (i.e., injury in fact, causation, and redressability) to assert a claim under RSA 151:21, IV. The Tillotsons allege that while Sean was a patient at DHMC, Dr. Girard did not fully disclose the diagnostic test results as required by the statute. These allegations are sufficient at this early stage to state a claim under this section of the statute. And, because the cause of action accrued before Sean's death, Bethanne Tillotson, as the administrator of Sean's estate, has standing to bring this claim. See RSA 556:15. Thus, the court rejects DHMC's argument that plaintiffs lack standing to assert a violation of the Patients' Bill of Rights, RSA 151:21.[2]

---

[2] Count III of the proposed amended complaint also alleges that DHMC violated RSA 151:21, X, by failing to provide the Tillotsons with complete copies of Sean's medical records. Because, as explained above, the court finds that Count III asserts a viable claim under the Patients' Bill of Rights, the court need not decide, at this stage, whether the medical records portion of the claim survives.

II. Timeliness

DHMC next argues that the Tillotsons' motion should be denied because of undue delay. This argument is without merit. Due to DHMC's own delay in making complete disclosures during discovery, the Tillotsons first learned of the re-measured images and cine clips on January 31, 2017. They filed the motion to amend on May 12, 2017, after conducting further discovery on the issue. The three and a half months between learning of the additional images and filing the motion to amend was not unjustified and thus does not constitute undue delay.

III. Prejudice

Finally, DHMC argues that granting the motion to amend will add considerable time to trial preparation and result in unfair prejudice. The court does not agree. The Patients' Bill of Rights claim is based on Dr. Girard's actions and communications with respect to the May 1 ultrasound; this same evidence is relevant to the Tillotsons' original malpractice claim. The Patients' Bill of Rights claim, therefore, will not add significant time to discovery or trial preparation in this case. As such, the addition of this single claim will not unduly prejudice DHMC. See Klunder, 778 F.3d at 34-35.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for leave to amend (doc. no. 26) is **GRANTED**. Plaintiffs shall file the proposed amended complaint (doc. no. 26-1) as the amended complaint on or before September 8, 2017.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 5, 2017

cc: Nicholas F. Casolaro, Esq.
    Bruce W. Felmly, Esq.
    Peter W. Mosseau, Esq.
    Kaveh S. Shahi, Esq.